# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ADRIAN OUTRIDGE,

                    Plaintiff,

-vs-                                      Case No.  6:06-cv-1866-Orl-31JGG

QUALITY RECOVERY SERVICES, INC.,
CLIFTON TRUMAN, PENNY A. DUNN,
MILES PROPERTIES, INC.,  and
CHARMAINE  HILL,

                    Defendants.

_____

# ORDER

      This matter comes before the Court without a hearing on the Motion to Dismiss with Prejudice Plaintiff's Second Amended Complaint (Doc. 29) filed by Defendants Quality Recovery Services, Inc. ("Quality"), Clifton Truman ("Truman"), Miles Properties, Inc. ("MPI"), and Charmaine Hill ("Hill")[1] (collectively, the "Defendants") and the response (Doc. 32) filed by the Plaintiff, Adrian Outridge ("Outridge").

      The Second Amended Complaint (Doc. 12) comprises 37 pages, 45 counts, and 110 numbered paragraphs, several of which include subparagraphs or extend over a page or more.  At its core, so far as the Court can discern, is a dispute over a debt of about $1,800, which Quality attempted to collect from Outridge on behalf of MPI.  Outridge contends that those efforts resulted

---

[1]Defendant Penny A. Dunn has not been served, and there is some question as to whether she exists.  (Doc. 31).

in dozens of violations of federal and state RICO statutes and violations of the Fair Debt

Collection Practices Act.

## II.      Standards

### A.      Motion to Dismiss

In ruling on a motion to dismiss, this Court must view the complaint in the light most

favorable to the Plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its

consideration to the pleadings and any exhibits attached thereto.  Fed.R.Civ.P. 10(c); *see also*

*GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  The Court will liberally

construe the complaint's allegations in the Plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411,

421 (1969).  The Court will not dismiss a complaint for failure to state a claim unless it appears

beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief.

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, "conclusory

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not

prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a

short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v.

Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed.R.Civ.P. 8(a)).  This is a liberal

pleading requirement, one that does not require a plaintiff to plead with particularity every element

of a cause of action.  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir.

2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting

all the material elements necessary to sustain a recovery under some viable legal theory." *Id.*

(internal citation and quotation omitted).  "A complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests."  *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

### B.   Shotgun Pleadings

Generally speaking, shotgun pleadings "are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense."  *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).  Shotgun complaints

> invariably begin with a long list of general allegations, most of which are immaterial to most of the claims for relief.  The general allegations are incorporated by reference into each count of the complaint; the complaint is followed by an answer that responds to each and every statement.  If the trial judge does not quickly demand repleader, all is lost – extended and largely aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits.

*Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

> [I]t is much easier in the short term to permit shotgun pleadings – in the hope that the parties will settle their dispute – instead of intervening *sua sponte* to narrow the issues.  In the long term, however, the judicial work that results from shotgun pleading is far more time consuming than the work required up front to prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined.  As we have previously stated, and state once again, district courts have the power and the duty to define the issues at the earliest stages of litigation.

*Id.*  If, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene *sua sponte* and order a repleader.  *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001).  This duty to

intervene *sua sponte* applies whether the court is faced with a shotgun complaint or a shotgun answer. *Id*. at 1133, n.114.

> Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice. The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard. Wasting scarce judicial and parajudicial resources impedes the due administration of justice and, in a very real sense, amounts to obstruction of justice.

*Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001) (internal quotation omitted).

## III.   Analysis

After attempting to establish this Court's jurisdiction over the Complaint and the propriety of venue in this district, Outridge spends two pages explaining "HOW THE DEBT COLLECTION FRAUD RACKET WORKS" (Doc. 12 at 5-6) (emphasis in original). The remainder of the Second Amended Complaint is a bewildering labyrinth of conclusory "counts,"[2] followed by prayers for relief that are, in turn, followed by the (purported) factual support for the preceding counts. It appears that the entire basis for these allegations is Outridge's contention that Quality, rather than MPI, is attempting to collect the debt[3]. If Outridge ever denies owing the money to Miles, the denial has been lost somewhere within the 37 pages and 45 counts of the Second Amended Complaint. Aside from alleged failures by the Defendants to perform their duties under various statutes, the harm to Outridge appears to consist of somewhat less than $100 in deposits lost as a result of the disputed debt appearing on his credit report.

---

[2]For example, Count I, in its entirety, states that "Quality Recovery Services, Inc. violated **18 U.S.C. § 1341** (*relating to mail fraud*) on or about February 4, 2004. *See* exhibit A." (Doc. 12 at 7) (emphasis in original).

[3]According to the Defendants, the Plaintiff believes that it is illegal to collect a debt that has been "charged off."

Although the Second Amended Complaint differs in form from a typical shotgun complaint, it is substantively identical to such a pleading.  It begins with a rambling recitation of factual allegations that could not possibly be material to any of the causes of action they assert.  *See Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991).  And though Outridge has not fallen into the typical *pro se* litigant's trap of incorporating every allegation into each count that succeeds, he nonetheless has created a tangled morass of allegations, explanations and demands that defy reasonable efforts at assessment and response.  Clearly, the Second Amended Complaint does not satisfy Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" of the claim showing that the Plaintiff is entitled to relief.  And despite Outridge's verbosity, many of his allegations are too vague to successfully state a cause of action.  For example, to take a passage at random, paragraph 37 provides as follows:

> 37.     Predicate act K violating 18 U.S.C. § 1961(B), 1962, and Fla. Stat. § 895.02(35) & 895.03: Adrian Outridge re-alleges paragraphs 10 through 13 and incorporates wholly in part here in as if pled and also alleges the following:
>
>    (a)     On or about January 10, 2005, predicate actor Clifton Truman, by committing mail fraud, advanced a writing and deposited in the United States Postal Mail Services to 305 E. Commercial St., Sanford Florida.  Clifton Truman advanced a writing which he knew was false, with the intention that Adrian Outridge rely on the fraud to Adrian Outridge's detriment.  The false statements by Clifton Truman include but not limited to, declaring proprietary for an unknown, unlawful or illegal debt, declaring that the unknown, unlawful or illegal debt has not been credited by any available means such as a claim on insurance or tax write-off.  The purpose of the mail fraud was to extort Adrian Outridge in a sum of $1,758.62.  A jury shall determine that Clifton Truman violated 18 U.S.C. § 1961(B), 1962, FL Statute § 895.02(35) & 895.03 by the fraud and extortion which occurred on January 10, 2005.

(Doc. 12 at 16).  Despite containing a plethora of legal-sounding mumbo-jumbo (e.g., "predicate actor," "declaring proprietary for an unknown, unlawful or illegal debt"), the quoted passage lacks basic, required information such as a description of the writing (a bill? a credit report?),

identification of the recipient or intended recipient of the writing, specifics as to the method by which the fraud was to be accomplished (as required by Rule 9(b)[4]) and whether Outridge actually suffered any harm as a result of this act. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1499-1500 (11th Cir. 1991) (holding that civil RICO plaintiff relying on alleged mail or wire fraud as predicate act "must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations in furtherance of the scheme."). The Second Amended Complaint contains dozens of similarly impenetrable passages, none of which explain the basis for Outridge's belief that he did not owe the money – another fundamental failure.

## IV.     Conclusion

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Second Amended Complaint (Doc. 12) is **DISMISSED WITHOUT PREJUDICE**. The Plaintiff may file an amended complaint within 20 days of this order. If he chooses to do so, the amended complaint must, at a minimum, (1) specify the conduct subjecting *each* Defendant to liability; (2) state sufficient facts to apprise the Defendants of the charges against them individually; (3) satisfy the requirements of Rule 8(a), 9(b) and Rule 10(b), among others; (4) answer the questions raised above, such as the basis for the Plaintiff's belief that he did not owe the debt, and whether he ever relied to his detriment on any of the alleged misrepresentations; and (5) eliminate factual assertions that are not material to one or more theories of liability. The re-filing of a complaint "as is" or with deficiencies addressed in this order may result in dismissal with prejudice or other sanctions this court deems proper.

---

[4]Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity."

And it is further **ORDERED**, in light of this dismissal, that the Motion to Dismiss with Prejudice Plaintiff's Second Amended Complaint (Doc. 29) is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 22, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party